Osman Khan, *Pro se*
Email: ozzy.khan.247@gmail.com
P.O. Box 2025,
Princeton, NJ 08543
Phone: (801) 885-7761

*Pro se Appellant*

**FILED**
CLERK, U.S. DISTRICT COURT

**01-31-2024**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ ts _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re:

HEARTWISE, INC.,
    *Debtor*

_____

OSMAN KHAN
    *Appellant*,

v.

TUONG NGUYEN; EARNESTY, LLC.;
ROBINSON PHARMA, INC.; ALPHA
HEALTH RESEARCH;
    *Defendant-Appellees.*

HEARTWISE, INC.,
    *Debtor-Appellee.*

**District Court Appeal No.:
8:22-cv-00997-WDK**

Related District Court Appeal No.:
8:21-cv-01961-WDK

Adversary Proceeding No.:
8:21-ap-01019-SC

Bankruptcy Case No.:
8:20-bk-13335-SC

**APPELLANT'S REPLY TO
DEFENDANT-APPELLEES'
OPPOSITION TO APPELLANT'S
EX PARTE MOTION FOR A
PROCEDURAL ORDER**

[Related to Dkt. Nos. 63, 64 and 65]

Judge: Honorable William D. Keller

i

# **TABLE OF CONTENTS**

I.      REPLY ARGUMENT ................................................................................ 2

    A.      Identity of the appellees remains a critical determination in these
        appeals and proceedings .......................................................... 3

    B.      Opposition fails to show prejudice, does not address Appellant's
        prejudice, and misrepresents "four weeks" as "nearly *two years*" ......... 4

    C.      Opposition misses the point about "length" of the delay ..................... 7

    D.      Opposition fails on the third factor about the "reason" for delay .......... 8

    E.      Opposition fails to rebut Appellant's good faith argument and
        does not address its own bad faith ........................................... 8

II.     CONCLUSION ...................................................................................... 9

III.    THE APPEAL CANNOT BE DISMISSED AT THIS TIME ........................ 9

CERTIFICATE OF COMPLIANCE ..................................................................... 15

CERTIFICATE OF SERVICE ............................................................................. 16

In support of *Appellant's Ex Parte Motion for a Procedural Order Seeking Leave of Court and Extension of Time to File Opening Brief* [Dkt. No. 64] ("Motion"), Appellant [1] hereby respectfully submits this reply to *Appellees' Opposition to Appellant's Ex Parte Motion* [Dkt. Nos. 63 and 65[2]] ("Opposition"). The Opposition was filed by Earnesty LLC ("Earnesty"), Robinson Pharma Inc. ("Robinson Pharma"), Alpha Health Research ("Alpha"), and Tuong Nguyen ("Nguyen" and, together with Earnesty, Robinson Pharma, and Alpha, the "Defendant-Appellees"). Notably, Heartwise, Inc. ("Debtor-Appellee") did ***not*** oppose the Motion.

## I.  REPLY ARGUMENT

The Opposition makes a half-hearted attempt to oppose the Motion, implicitly conceding Appellant made a clear showing of "excusable" neglect under the governing standard.

On matters of law, Opposition concedes that the legal standard ***is*** applicable, makes no attempt to distinguish *Hawaiian Airlines* and other cases the Motion relies on, and tacitly admits that the "clear trend" since 2004 is to "afford the movant more lenience," including excusing even some "negligence" and "carelessness." *See* Motion at 5-6 (citing *Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004) (en banc)). Opposition makes ***no argument*** regarding Appellant's negligence or carelessness—because there was none—and even if there was, makes no argument concerning why the Court should not be more lenient.

On matters of fact, the Opposition offers ***no evidence*** of prejudice and merely makes attorney ***argument,*** some of which misrepresents the record. Additionally, because no evidentiary objection to Appellant's evidence has been made, the Court should construe all facts supporting the Motion as ***uncontested***.

---

[1] Unless otherwise stated, the capitalized terms herein have the same meaning ascribed to them in the Motion.

[2]  Dkt. Nos. 63 and 65 appear to be identical, and perhaps filed twice by mistake.

**A.**   **Identity of the appellees remains a critical determination in these appeals and proceedings**

First and foremost, it is important to note for an accurate record the ***identity*** of each party filing the Opposition. Accuracy of party names is important here because the Court found certain parties to be absent in the First Appeal, and then relied on that finding to support its decision on the controversial[3] doctrine of equitable mootness. Specifically, the Court found that Earnesty, Robinson Pharma, and Alpha were ***not*** before the Court, and that they would be adversely affected if the Court reached the merits and ruled in Appellant's favor. *See* First Appeal, Dkt. No. 54, pg. 27. In Court's reasoning, the ***absence*** of those parties tilted the balance in favor of deeming the First Appeal equitably moot—*i.e.*, the Court's "unwillingness" to reach the merits as opposed to its "inability." *Id.* at 22. In other words, despite finding it had the ***ability*** to reach the merits, the Court was ***unwilling*** to decide the merits to protect supposedly absent parties. That decision could—and would—have gone the other way had the Court found those parties ***were*** before the Court. In this Second Appeal, however, those allegedly-absent parties ***are*** undeniably before the Court. Thus, it is important to note, for the record, the name of each party who participated as well as the name of each party who—for strategic reasons—chose to remain silent.

Additionally, an accurate record here is critical because the Court has not yet decided what ***preclusive effect*** one appeal has on the other. Although the Court deemed the First Appeal equitably moot, it categorically rejected Debtor-Appellee's argument that the issues were constitutionally moot. *See* First Appeal, Dkt. No. 54, pgs. 21 (the Court noting: "The Appellee argues that, '[b]ecause the Confirmation Order is final and not subject to appeal, the issues in this appeal are moot,'" and

---

[3] https://www.youtube.com/watch?v=jiGMKh8Nw5E&t=615s  (a panel of Ninth Circuit appellate judges addressing an audience of bankruptcy judges and discussing the "difficult road," "tension," and "incoherent" caselaw in the Ninth Circuit concerning equitable mootness) (last visited January 26, 2024).

concluding: "the Court finds that the appeal is **not** constitutionally moot." (emphasis added)). In this appeal, Defendant-Appellees continue to make almost identical arguments about constitutional mootness that were rejected in the First Appeal, but have **not** made equitable mootness arguments (presumably aware of the absurdity of arguing their own absence). That constitutes a waiver/forfeiture, and even if not, would fail on the merits. As this reply is **not** about the merits, the point is only that the issues in both appeals continue to remain "live," and the accuracy of the record is important.

    ***For the record***, notice of the Motion was properly served on **all** attorneys of all appellees in both the First and Second Appeals. Thus, all appellees—Nguyen, Heartwise, Earnesty, Alpha, and Robinson Pharma—are on notice that Appellant contends herein, and will argue whenever necessary, that arguments by **present** parties regarding adverse effects on supposedly "***absent***" parties should be rejected, both in this and higher courts. To be clear, only Defendant-Appellees opposed the Motion, but Debtor-Appellee did **not** oppose the Motion, which constitutes its waiver/forfeiture. The five parties name above **are** before this Court, and all of them are now represented by the same attorneys and the same law firm.

    In short, irrefutable ***evidence*** exists that all parties **are** before this Court. Like any litigation, a party on notice who makes a strategic decision to remain silent must deal with the consequences of its decision. Equitable arguments in favor of supposedly "absent" parties should be rejected.

### B.    Opposition fails to show prejudice, does not address Appellant's prejudice, and misrepresents "four weeks" as "nearly ***two years***"

    On the first *Pioneer* factor, the ***only*** prejudice Opposition contends exists is that "this appeal has been pending for nearly two years." It argues: "For whatever reason, Appellant has repeatedly endeavored to delay prosecuting this case. This alone warrants denial of the Motion and dismissal of the appeal." 3:9-12.

    As a legal matter, this is not ***prejudice.*** It is not because, as the Motion explains, the first factor "requires greater harm than simply that relief would delay resolution of

the case." *See* Motion at pg. 8 (citing *Hawaiian Airlines*) (citing *Lemoge v. U.S.*, 587 F.3d 1188, 1196 (9th Cir. 2009) (other citations omitted). Thus, a delay in resolution of the case by four to six weeks that *may* result from granting the Motion is not "prejudice"—as a matter of law.

The Opposition is also wrong about prejudice as a matter of fact, misrepresenting both the relief sought and the record itself. Each is addressed below.

As to *relief*, the Motion does not request an extension of "two years." It requests an extension of only four weeks, and an additional two weeks, *i.e.*, a total of six weeks, if the Court sees no material difference between four and six when evaluating all equitable factors. Thus, the only prejudice *relevant* to the Motion is the additional four to six weeks, not "almost *two years*." The math is also incorrect; nineteen months is not two years—Opposition incorrectly inflates the time period by 26%.

As to the *record*, the Opposition makes at least four mistakes:

- First, it assumes that the Second Appeal is a standalone appeal that is completely disconnected from other matters, and argues as if the appeal had been languishing due to lack of prosecution. It ignores the fact that this is *Second* Appeal, which the Court determined was related to the *First* Appeal that *was* being actively prosecuted.

- Second, it disregards the fact that the overlap in the appeals was *substantial*. The Court accepted Appellant's argument that "[t]he issues raised by the parties in the two appeals have substantial overlap and are related in ways such that a decision in [the First Appeal] may be outcome-determinative for issues in [this Second Appeal]," and must be stayed to avoid the risk of "inconsistent decisions." [Second Appeal, Dkt. No. 18, pg. 3.]

- Third, it disregards the fact that the Second Appeal was *stayed* by an order of this Court, which stay was lifted only on October 26, 2023. A stay means just that—a *stay*. Filing any brief/motion during the stayed period would have been a violation of the Court's stay order.

- Fourth, it disregards the Court's order accepting the relatedness of the two appeals based on ***three reasons***, which was that the appeals:

    (A) "Arise from the same or closely related transactions, happenings or events;"

    (B) "Call for determination of the same or substantially related or similar questions of law and fact;"

    (C) "For other reasons would entail substantial duplication of labor if heard by different judges."

[Second Appeal, Dkt. No. 21.]

Thus, Defendant-Appellees assertion—that Appellant has not prosecuted this appeal for almost two years—is legally unavailing and factually incorrect. The argument is silly, too, and reveals that counsel could not think of better arguments.

Additionally, the Opposition fails to address the ***optional*** factor concerning prejudice to the movant (Appellant). Therefore, when considering this factor, the Court need ***only*** consider Appellant's argument and, as explained in the Motion, a denial will severely prejudice the Appellant.

Lastly, the Opposition fails to address the factor concerning prejudice to ***all*** parties—Appellant and all appellees—arising from a ***new issue*** that will undoubtedly be hotly contested if the appeal is dismissed at this juncture. Specifically, a denial will create a new issue concerning whether the Court committed a reversible error in dismissing the appeal based on a finding that the neglect here was ***not*** "excusable." Because Appellant has a lot at stake here—$10 to $20 million—it will have no choice but to appeal a dismissal, which will take one to two years to resolve in the Ninth Circuit. And regardless of who prevails there, appeal of the one procedural issue will delay the ***final*** resolution of all substantive issues by one to two years, delaying ultimate resolution and wasting judicial resources just like in *Hawaiian Airlines*.

In short, the Opposition fails on the first *Pioneer* factor in multiple ways. The Court should find that the first factor tilts ***decisively*** in favor of granting the Motion.

### C.    Opposition misses the point about "length" of the delay

On the second factor, the Opposition misses the point by arguing the delay is "unreasonable" because of what the Appellant did or did not do. Opposition does not address the argument that the requested delay was less than half of what the *Hawaiian Airlines* court deemed to be a "minor delay"—a determination this Court should give significant deference to because of that court's survey of caselaw. Opposition's other arguments are ***irrelevant*** to the analysis of the second factor, the "***length***" of the delay.

Although irrelevant, Appellant addresses herein the baseless assertion that Appellant has engaged in "repeated disregard and violation of this Court's orders and deadlines." Opposition at 1:9-10, 3:21-22, and 5:4-5. The Court has made ***zero*** findings of Appellant's alleged "disregard" or "violations." Thus, the assertion is entirely ***unsupported***. The only citations the Opposition provides is at page 1:9-10, which are Dkt. Nos. 57 and 62. However, Dkt. No. 57 is an order lifting stay of this appeal, which Appellant had not opposed. That order also contained a statement— improperly proposed by Defendant-Appellees—that Appellant "is required to show cause in writing why this appeal should not be dismissed." *Id.* at 2:9-12. Appellant then filed, *inter alia*, *Objection to Appellees' Improper Attempt to Obtain Substantive Relief Without a* Motion, Dkt. No. 59, wherein it demonstrated that the "show cause" ruling was unjustified and a result of Defendant-Appellees improper attempt. *See generally id*. The Court then entered Dkt. No. 62, a scheduling order setting deadlines for appellate briefs. The Court made ***zero*** findings about the alleged "violations."

Back to ***relevant*** analysis, the few weeks delay requested here may actually result in a ***faster*** resolution of the appeals because it enables Appellant to draft a more comprehensible brief, free of defects, which will ultimately make the job easier and/or faster for clerks and the Court. Thus, granting the Motion may delay the resolution of this appeal by four to six weeks at worst, but may quite possibly speed up its resolution.

In short, the Opposition fails on the second *Pioneer* factor. The Court should find that the second factor also tilts ***decisively*** in favor of granting the Motion.

### D.    Opposition fails on the third factor about the "reason" for delay

On the third factor, the Opposition's dismissive statements about serious family illnesses are not well taken. The Opposition tries to create a false equivalency between "a deliberate decision," on the one hand, and unexpected events, *post hoc* knowledge of a first-time pro se Appellant, complexity of issues, and inextricably intertwined procedural posture, on the other hand. The illnesses were ***unexpected,*** Appellant learned ***post hoc*** that record preparation and appellate briefing is a massive undertaking for a single person (no paralegals here), the jurisdictional issues are ***complex***, and that the procedural history in the appeals is ***inextricably intertwined*** with the proceedings in the bankruptcy court. One must also consider that the dual-appeals of the dual-proceedings reviewing jurisdictional issues are simultaneously creating jurisdictional records ***of their own***. The record of the Second Appeal is extensive, with over 230 docket entries, and includes almost all entries from the First Appeal (from the appellate docket). Overall, Appellant here has to file an opening brief essentially addressing ***two appeals*** of the respective underlying proceedings in ***one brief***. This is not an easy task, especially when the task was interrupted by unexpected illnesses.

All of the foregoing are acceptable "reasons," independently and collectively, for finding "excusable" neglect. It must also be noted that Defendant-Appellees did not make any evidentiary objections to declaration, screenshots, and exhibits; they make only a conclusory argument that Appellant "has presented no good reason."

In short, the Opposition fails on the third *Pioneer* factor, too. The Court should find that the third factor also tilts ***decisively*** in favor of granting the Motion.

### E.    Opposition fails to rebut Appellant's good faith argument and does not address its own bad faith

The Opposition offers no evidence or credible arguments showing Appellant acted in bad faith. Simply restating Appellant's reasons and difficulties is not a ***showing*** of "bad faith." It merely demonstrates that Appellant missed a deadline—the fact that "neglect" occurred is ***not*** in dispute. Mere fact of a missed deadline is not bad

faith. The proper inquiry under the third factor is whether Appellant was, for example, intentionally causing delay, engaging in gamesmanship with an underhanded motive, or stating one purpose but causing delay to achieve a different purpose. None of that occurred here. Opposition completely misses the point.

Importantly, the Defendant-Appellees fail to address arguments about their own bad faith in refusing to agree to a three-week stipulation Appellant had requested. With a stipulation, Appellant could have been working on the brief instead of spending time on the Motion and this Reply, and the Court's time on this Motion would have been saved. One reasonable inference is that Defendant-Appellees are the ones causing delays to make their mootness arguments stronger. After all, their *entire* legal strategy these proceedings has been to deny Appellant his day in court on the merits by placing procedural impediments and throwing mootness arguments. The Opposition makes zero attempt to address Appellant's arguments about Defendant-Appellees' bad faith and, therefore, the Court need only consider Appellant's argument on this point.

In short, the Opposition fails on the fourth *Pioneer* factor, too. Thus, the Court should find that the fourth factor also ***decisively*** tilts in favor of granting the Motion.

## II.    CONCLUSION

Weighing all *Pioneer* factors ***together***, the Opposition fails miserably. Therefore, the Court should rule that Appellant's neglect was "excusable" under the applicable standard, and grant the Motion.

==================

2,590 words up to this point. Thus, the reply is compliant

with the 2,600 words limit under FRBP 8013(f)(3)(C).

==================

## III.    THE APPEAL CANNOT BE DISMISSED AT THIS TIME

In the final section of its Opposition, Defendant-Appellees inserted an improper motion requesting the Court to dismiss the Second Appeal. Opposition at pg. 5:4-5 ("Appellant's repeated violations of this Court's orders and failures to comply with

the Court's deadlines warrant dismissal of this appeal."); *Id.* at 5:11-12 (the final sentence of the Opposition states: "Accordingly, the Court should deny the Motion ***and*** dismiss this appeal for Appellant's failure to prosecute and failure to comply with this Court's orders." (emphasis added)).

The Motion pertained to "excusable neglect" standard under FRBP 9006(b)(1), ***not*** "dismissal" standard under FRCP 41(b) for "failure to prosecute" and "failure to comply with this Court's orders." The two are governed by different legal standards and precedents, and implicate different sets of facts. Thus, Defendant-Appellees' dismissal request constitutes a motion ("Cross-motion") that is procedurally improper, substantively deficient, and lacks merit. Appellant was required to, out of abundance of caution, spend extra time to research law on the Cross-motion and draft a response, which delayed the filing of this reply and required use of excess words (1,700 words on top of the 2,600 words limit). Appellant respectfully requests leave of the Court for the additional words and the delay, both of which were a ***direct*** result of the Defendant-Appellees' filing of the improper Cross-motion.[4]

This appeal cannot be dismissed at this juncture for at least ***five*** reasons.

***First***, the Cross-motion assumes that a denial of the Motion results in a *de facto* dismissal of the appeal. However, a denial does not ***necessarily*** warrant dismissal. Even if the Motion were denied, Appellant can still seek relief via a motion for summary disposition for which no deadlines have been set. Although an appellate brief/reply generously allows Appellant to use 13,000 + 6,500 words to make its case, a motion/reply allows Appellant to use 5,200 + 2,600 words, with which Appellant can still make its case, if needed.

---

[4] Because Appellant does not know whether the Court will grant the Cross-motion, Appellant intends to file, in short order, a separate objection to the bankruptcy court's orders pursuant to FRBP 8018.1, to protect its rights. This redundancy is necessitated only because of Defendant-Appellees' filing the Cross-motion. Further, it burdens a *pro se* Appellant's already-stretched time and resources, and equity warrants not only granting the Motion but also giving additional time on ***top***.

*Second*, the Cross-motion embedded within an Opposition fails to comply with basic procedural requirements. The Ninth Circuit insists on strict adherence to procedural norms for motions, especially those seeking such significant relief as dismissal for lack of prosecution. *In re Eisen*, 31 F.3d 1447, 1455 (9th Cir. 1994) (underscoring the necessity of procedural compliance and a "noticed motion" before considering dismissal) (citing *Oliva v. Sullivan*, 958 F.2d 272 (9th Cir. 1992)). The proper procedure includes notice and the filing of a dedicated motion. The Defendant's casual insertion of a dismissal request within an opposition document disregards these procedural safeguards, and fails to recognize the gravity associated with such a motion

*Third*, the Cross-motion lacks even the most basic articulation of the legal standard governing dismissals. Rule 41(b) of the Federal Rule of Civil Procedure allows a district court to dismiss an action due to a party's failure to prosecute or to comply with court's rules or a court order, and is applicable to appeals from a bankruptcy court to its supervising district court. *In re Hunt*, 599 F. App'x 690, 691 (9th Cir. 2015) (stating that "dismissal of a bankruptcy appeal for failure to prosecute is appropriately analogized to a dismissal under Rule 41(b).") (citing *Nat'l Bank of Long Beach v. Donovan (In re Donovan)*, 871 F.2d 807, 808 (9th Cir. 1999) (per curiam)). A court must consider ***specific factors*** to determine if dismissal is warranted. *Id.* (citing *Moneymaker v. CoBen (In re Eisen)*, 31 F.3d 1447, 1451 (9th Cir. 1994) as a case "setting forth factors under [FRCP] 41(b) for determining whether to dismiss a bankruptcy proceeding for failure to prosecute")). Those factors are: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *In re Eisen*, 31 F.3d 1447, 1451 (9th Cir. 1994). "These factors are not a series of conditions precedent before the judge can do anything, but a way for a district judge to think about what to do." *In re Phenylpropanolamine*, 460 F.3d 1217, 1226 (9th Cir. 2006) (cleaned up). "Dismissal is a harsh penalty and is to be imposed only in extreme

circumstances." *Id.* A "court must show it had sufficiently considered and exhausted alternatives to dismissal." *Riverside Cnty. Tax Collector*, No. 20-55790, at *2 (9th Cir. Nov. 17, 2021) (citing *Greco v. Stubenberg*, 859 F.2d 1401, 1404 (9th Cir. 1988).

Defendant-Appellees have absolutely failed to articulate or apply the legal standard under Rule 41(b), and done so surreptitiously, presumably because their motion would fail under the standard. Their Cross-motion makes no mention of the applicable factors and provides zero analysis as to how they might support their request for substantive relief—a dismissal of this appeal. This omission alone renders the Cross-motion deficient and requires denial under Ninth Circuit precedents.

***Fourth***, the Cross-motion fails on the merits because absent from it is any evidence or legal argument to meet the stringent requirements for a dismissal. Defendant-Appellees failure to present evidence or relevant caselaw underscores the ***baseless*** nature of their position. Because the Cross-motion does not address most of the factors, Appellant addresses herein only those facts or law taken from the Opposition that can arguably be construed as "presented" to support the factors applicable to consideration of a motion under Rule 41(b).

In Section I.B of this reply, *supra*, Appellant demonstrated that the assertion— that the Second Appeal has not been prosecuted for nineteen months—is incorrect (and that it is also silly), when taking into consideration the nature of the dual-appeals and the substantial overlap of issues of fact and law, and where the Second Appeal had been stayed by a court order while the First Appeal was being prosecuted. In Section I.C of this reply, *supra*, Appellant already demonstrated the baseless nature of the assertion concerning Appellant's alleged "repeated disregard and violation of this Court's orders and deadlines." In the interest of brevity, Appellant incorporates those rebuttals herein by reference. Thus, the Cross-motion fails on its factual assertions.

The Cross-motion also fails on its legal assertions. It cites and relies on only two cases for support, *Greco v. Stubenberg*, 859 F.2d 1401, 1404 (9th Cir. 1988) and *In re Wright,* 659 Fed.Appx. 438 (9th Cir. 2016). Neither survives scrutiny.

1        *Greco* is of no help because it **pre-dates** the more lenient standard in the Ninth

2  Circuit since 2004. Thus, whatever the holding of *Greco,* it is now old law, and no

3  longer applicable in light of the *en banc* Ninth Circuit decision in *Pincay. Greco* is

4  also factually distinguishable because the appellant there kept misleading the court

5  about having ordered hearing transcripts when he had not paid for them, and failed to

6  prosecute despite several warnings. *Greco* at 1403-1404. Here, in contrast, Appellant

7  actively prosecuted the First Appeal, and actively prosecuted the Second Appeal by

8  obtaining and defending a stay over Defendant-Appellees' objections. The stay was

9  lifted only about three months ago, and the Motion was filed only about a week after

10  Appellant missed a deadline. How can obtaining and defending stays, filing motions,

11  including the Motion and this reply, construed as "failure to prosecute" an appeal?

12        *In re Wright* also does not help Defendant-Appellees. The Cross-motion

13  misleadingly states that the court there affirmed dismissal when opening brief had not

14  been filed "for months," whereas the actual holding states that the district court waited

15  for "two years" before dismissing the appeal for lack of prosecution. The comparison

16  below shows the difference between the representation and the actual holding.

17

18  | **The Opposition (pg. 5)** | **Actual holding of the Ninth Circuit** |
19  | --- | --- |
20  | "affirming district court's dismissal of appeal for failure of pro se appellant to prosecute where opening brief had **not been filed for months** and court previously gave appellant extension of time to file" (emphasis added) | "The district court did not abuse its discretion in dismissing Lorece Wright's bankruptcy appeal for failure to prosecute because it warned her that a failure to file an opening brief on her own behalf would result in dismissal, gave her a 30-day extension of time to obtain counsel or file her opening brief, and **did not dismiss the appeal until two years after she failed to submit her opening brief**." (emphasis added) |

27        **Fifth** and last, the Cross-motion is a disguised motion for reconsideration of this

28  Court's previous orders. It attacks the Court's findings about the procedural posture of

the two appeals that warranted a stay of the Second Appeal, and the three reasons the Court accepted in Dkt. No. 21. *See, supra*, Section I.B, pg. 6. Defendant-Appellees argued against a stay multiple times and failed. *See* Dkt. No. 12, dates July 22, 2022, pg. 12:23-24 (Defendant-Appellees arguing that the First Appeal "will have no bearing on the legal or factual issues in this appeal"); *see also* Dkt. No. 17, dated August 2, 2022, pg. 2:26-27 (Defendant-Appellees arguing: "The Parties have a fundamental disagreement about the relatedness of the Separate Appeal and this appeal."); *see also* Dkt. No. 29, dated December 20, 2022 (requesting and failing again: "Because the outcome of the First Appeal has no bearing here, the stay should be lifted."). The Cross-motion is also a motion for reconsideration of previous denials of its motion seeking dismissal. *See* Dkt. No. 58, dated November 16, 2023, pg. 2:27-3:1 ("Appellees respectfully request that the Court enter an order dismissing this appeal"). Motions for reconsideration are governed by *different* legal standards and precedents, which have *not* been met here. Defendant-Appellees argument that Appellant failed to file its brief for nineteen months is clearly an attack on this Courts previous findings, conclusions, and decisions about the relatedness of the appeals, the decision to stay, and the decision to deny dismissal.

The Cross-motion fails on all counts. It should be denied.


Respectfully submitted on January 31, 2024.


By:

Osman A. Khan
*Pro se Appellant.*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this reply in support of the Motion contains 2,590 words, counting from page 2 through the end of the Conclusion section on page 9. An additional 1,709 words were used in Section III to respond to Defendant-Appellees' request for dismissal of the appeal. The reply uses 14-point Times New Roman font, was drafted in Microsoft Word, and complies with the applicable type-volume requirements.

Respectfully submitted on January 31, 2024.

By:

Osman A. Khan

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2024, I electronically transmitted the attached document to the Clerk's Office using the Court's Electronic Document Submission System. The system transmits a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record. I have also transmitted the attached document to the following recipients via email:

- Anthony R. Bisconti
  - Counsel for Heartwise, Inc.; Robinson Pharma, Inc.; Earnesty LLC; Alpha Health Research; and Tuong Nguyen
  - tbisconti@bklwlaw.com

- Carlos A. Nevarez
  - Counsel for Heartwise, Inc.; Robinson Pharma, Inc.; Earnesty LLC; Alpha Health Research; and Tuong Nguyen
  - cnevarez@bklwlaw.com

- Matthew W. Grimshaw
  - Counsel for Heartwise, Inc.
  - MGrimshaw@marshackhays.com

- David A. Wood
  - Counsel for Heartwise, Inc.
  - dwood@marshackhays.com

- Nancy Goldenberg
  - United States Trustee in the Heartwise, Inc. bankruptcy case
  - Nancy.Goldenberg@usdoj.gov

Respectfully submitted on January 31, 2024.

By:

Osman A. Khan

---

APPELLANT'S REPLY TO APPELLEES' OPPOSITION TO MOTION FOR A PROCEDURAL ORDER

16